CHICAGO, B. & Q. R. CO. v. UNION PAC. RY. CO.

(Circuit Court, D. Nebraska. June 17, 1896.)

SPECIFIC PERFORMANCE—COMPLETENESS OF CONTRACT.

The C. and the U. railway companies entered into a written contract, whereby, in order to avoid unnecessary expense of construction, and to facilitate connections, each agreed to lease to the other certain portions of its line or to make a trackage arrangement for the use of such portions of the lines. It was provided that neither party should be obliged to take a lease or trackage contract, but either should be entitled to do so on demand; that such leases or contracts should be for 999 years, terminable after 10 years on notice; that the rent should be a proportion of the interest, at 6 per cent., on the value of the road used, based on wheelage, and that the leases should provide for giving the lessees equal rights of use in the road. The C. Co. afterwards filed a bill against the U. Co. and receivers of its property, who had been appointed in another suit, and asked specific performance of this contract in respect to one of the

portions of road mentioned therein. *Held*, that upon demurrer to the bill it could not be said that the contract was so incomplete as to be incapable of enforcement by a decree for specific performance.

Green & Breckenridge, for complainant.
W. R. Kelly and E. P. Smith, for defendants.

SHIRAS, District Judge.   In the amended bill filed in this case it is averred that on the 27th day of April, 1889, the Chicago, Burlington & Quincy Railroad Company and the Union Pacific Railway Company entered into a written agreement reading as follows:

"Preliminary Agreement.

"This agreement, made and entered into this 27th day of April, 1889, by and between the Chicago, Burlington & Quincy Railroad Company, party of the first part, and the Union Pacific Railway Company, party of the second part, witnesseth: Whereas, it is desirable, in order to avoid unnecessary expense of construction and operation and to facilitate connections between the parts of the respective systems of railroad of the parties hereto, that each party to this agreement should have the right to use certain portions of the tracks and railroad property belonging to the other party, or to railroad companies substantially controlled by the other party: Now, therefore, it is mutually agreed between the parties hereto as follows: First. The first party agrees to lease or procure a lease to or a joint trackage arrangement with the second party, or such other railroad company as it may designate of the following, to wit:   That portion of the line of the Lincoln & Northwestern Railroad Company between David City and Columbus, Nebraska, a distance of about 18.2 miles; also the portion of the line of the Denver, Utah & Pacific Railroad Company, if hereafter constructed, situated between Longmont and Plattville, Colorado, a distance of about 13 miles; also such portion of the right of way and property of the first party in the city of Lincoln, Nebraska, from O street south, as it (the second party) may require to secure access from its present tracks to its proposed new freight grounds, between 7th and 6th streets in said city, a distance of about one-half a mile.   Second. The second party agrees to lease or procure a lease to or a joint trackage arrangement with the first party, or such other railroad company as it may designate of the following, to wit:   That portion of the line of Denver, Marshall & Boulder Railway Company, situated between Argo and Boulder Junction, Colorado, a distance of about 13.6 miles, and that portion of the line of the Union Pacific Railroad Company between Plattville and Greely, Colorado, a distance of about 15 miles, and that portion of the Greely, Salt Lake and Pacific Railway Company, between Greely and Fort Collins, Colorado, a distance of about 84.5 miles, also that portion of the right of way and main line of the second party extending south from South Omaha for a distance of about 4 miles.   Third. Neither of the parties hereto shall be obliged to take a lease or trackage contract from the other party of any one or more of the above-mentioned parts or parcels of railroad belonging to or controlled by the other, but shall have the right to do so, as to any one or more of the above-mentioned parts, at its option, at any time within five years from this date upon the terms and conditions herein specified, such option to be signified by letter to the manager of the other party.   Fourth. Upon receipt of notice of option a lease or contract for joint use of the parcel of road mentioned shall be executed in proper form.   Such lease or contract shall date from the time when the use of such parcel is entered upon, and shall be for a term of 999 years, but after the expiration of 10 years from such date the lessee shall have the right, upon three years' notice, to discontinue such use and terminate the lease or contract and all liability thereunder.   Fifth. The terms of such leases or contract shall be as follows:   The lessee shall in each case pay as rental a proportion of the interest upon the value of the road or property so used at the rate of six (6) per cent. per annum, based on wheelage, and also a proportion of the expense of the maintenance and repairs and taxes thereof, based upon wheelage; it being agreed that the value of each of the roads

and tracks above specified shall be $15,000.00 per mile, except the valuation of the second party's track extending about 4 miles south from South Omaha; and also that portion of the first party's road and property in the city of Lincoln, to be used by the second party, which shall be settled hereafter by agreement or arbitration. Sixth. Such leases shall provide for granting to the lessee an equal right of possession, use, and enjoyment, the portion of road demised, and of all appurtenances and fixtures appertaining to said portion. All local business on any portion so leased or under trackage contracts shall belong to the lessor company and the lessee shall in no case do such business. Seventh. The second party agrees to sell and convey to the Denver, Utah & Pacific Railroad Company, for use in reconstructing its road, a certain abandoned grade, between Boulder Junction and Erie, Colorado, at twelve (12) cents per cubic yard. Eighth. If either party shall fail to carry out the stipulations herein made, or as lessee to pay the rentals provided, or shall fail to grant and secure to the other the joint use of the road or roads desired, as herein specified, and in this lease herein set forth, the other party shall, at its option, have the right to terminate all its obligations growing out of this contract, and the right of the party in default to occupy or use any of the road or roads herein specified belonging to or controlled by it.

"In witness whereof, the said parties of the first part and second part hereto set their hands this 27th day of April, 1889.

"The Chicago, Burlington & Quincy Railroad Company,
"By C. E. Perkins, Prest.

"Attest: E. S. Howland, Sec'y.

"The Union Pacific Railway Company,
"By C. F. Adams, Prest.

"Attest: Alex Miller, Sec'y."

It is further averred that in pursuance of the said agreement the complainant did lease and furnish to the defendant company a joint trackage arrangement for a portion of the road controlled by the complainant extending from David City, Neb., to Columbus, Neb., a distance of over 18 miles, and that the defendant company did lease and furnish to the complainant a joint trackage arrangement over a portion of the road controlled by the defendant company extending from Burnes Junction, in Colorado, to Utah Junction, in the same state, a distance of over 11 miles. It is further averred that, in order to avoid certain heavy grades necessary to be overcome in getting into the town of South Omaha, Neb., it is necessary that the complainant should obtain the right to run its trains over about four miles of the track owned and operated by the Union Pacific Railway Company running southwardly from South Omaha, and that the obtaining of such right to use the said four miles of the track of said Union Pacific Railway constituted to complainant the principal inducement for entering into the written agreement hereinbefore set forth; that, relying upon said agreement, the complainant has expended the sum of $75,000 in constructing some four miles of railway from a point on the line near La Platte, Neb., to Gilmore, on the line of the Union Pacific Railway, which, if used in connection with the four miles of the Union Pacific Railway track running southward from South Omaha, would enable complainant to reach the latter place to much better advantage than is now possible to complainant; that the Union Pacific Railway Company refuses to carry out the terms of said written contract in regard to a trackage arrangement over said four miles of its track extending south from South Omaha; that such refusal was made before the Union Pacific Railway Company's property was placed in the hands

of the receivers now in charge thereof, and that the receivers likewise refuse to carry out said written agreement so far as it pertains to the four miles of track running south from South Omaha. The purpose of the bill is to enforce specific performance of the contract by requiring the Union Pacific Railway Company to lease to the complainant the joint use of the named four miles of track running south from South Omaha, and requiring the receivers to carry out such lease so long as they remain in control of the property.

To this bill the Union Pacific Railway Company and the receivers interpose demurrers upon the general ground that the bill fails to disclose a case entitling complainant to the relief prayed for. In support of the demurrers it is argued that the agreement set up in the bill is in writing, and its terms cannot be enlarged or added to by parol; that as it is written the agreement does not form an enforceable contract between the parties, but, in effect, is only an agreement that in the future the parties will enter into a perpetual arrangement in regard to the several portions of their respective tracks named in the instrument signed; that the court cannot undertake in any form or through any agency to dictate the terms of such proposed contract, either with regard to the compensation to be paid or with regard to the manner of running the trains and the control over the same; that it is apparent that the preliminary agreement is not in itself a completed contract, so that it would be futile to decree a specific performance thereof; and, if the courts should undertake to compel the parties to enter into a lease or trackage arrangement, the court would be compelled to make a contract for the parties, as a basis for a decree of specific performance; and, finally, that the receivers are not bound, even by the terms of the preliminary agreement set forth in the bill of complaint.

The rulings of the supreme court in Railway Co. v. Alling, 99 U. S. 463, and Joy v. St. Louis, 138 U. S. 1, 11 Sup. Ct. 243, fairly illustrate the extent to which a court of equity is justified in going when dealing with public corporations and with respect to the use of the right of way and the railway tracks forming part thereof, when the interests of the public are involved. In the former case it was held that the court could compel a railway company, which had the prior right of way, to permit the use of its track by another company, where such combined use was necessary in the interests of the public; and that the court could, by proper orders, fix the conditions of such use and the compensation to be paid. In the latter case the court enforced a contract for the combined use of a portion of a railway track, although the contract did not, in terms, fix the compensation to be paid, nor provide fully for the mode of operating the trains. In the contract now under consideration the general method of ascertaining the compensation is fixed by the fifth clause of the agreement, which provides that the lessee shall pay as rental its proportion of 6 per cent. interest upon the value of the road so leased, such proportion to be based upon the wheelage; and also a like proportion of the expenses of maintenance and repairs of the leased road and the taxes thereon. This court cannot, upon a demurrer to the bill, in view of the rulings in the cases

just cited, hold that it is impossible to arrive at a fair and proper valuation of the four miles of tracks in controversy, or that the wheelage of the two companies over the same cannot be ascertained each year, or that the cost of repairs and maintenance, including the taxes paid, cannot be readily ascertained; and, if these data are ascertained, there does not seem to be any insuperable obstacle to reaching a fair and equitable compensation to be paid upon the basis set forth in the agreement of the parties. The same is true of the matter of the mode of running and controlling the trains of the respective roads, for it is said in Joy v. St. Louis, supra, that "in view of the testimony as to the use, by agreement, of the tracks of one railroad company by the engine and cars of another, the practical difficulties insisted upon of carrying out the regulations laid down in the decree of the circuit court amount to very little, if anything." If, therefore, it is practicable for a court of equity to establish by decree the mode of operating trains by two or more companies over a given portion of a railway track used in common, and if the agreement of the parties gives the general basis for the compensation to be paid, so that the amount to be paid can be ascertained by reference to matters of fact, can it be said that the contract in this case is so incomplete as to be incapable of enforcement by a decree for specific performance? It may be that, upon the coming in of the proof, it will appear that good reason exists why the court should not grant a decree for specific performance; but, as the matter is now presented by demurrer, it cannot be said that it clearly appears that the complainant is not entitled to a decree of performance as against the Union Pacific Company. So far as the receivers are interested, it does not appear from the allegations of the bill that a specific performance of the contract for a joint use of the four miles of railway in question would cast a burden upon the track property injurious or prejudicial to the interests of those interested in the property, and therefore it cannot be held that the mere fact that the court is holding possession of the property, through its receivers, debars the complainant from asking a decree of specific performance. The decree to be rendered, whether for or against the defendants, depends largely upon the facts, and the rights of the parties cannot be finally determined upon the demurrers to the bill. The demurrers are therefore overruled with leave to the defendants to answer the bill of complaint within 30 days.